**Green v. 7-Eleven Food Stores, Inc.**

*Arthur Levy*, for plaintiffs.

*George S. Saulnier*, *William C. Beatty* and *Ralph B. D'Iorio*, for defendants.

REED, J., July 3, 1970.—Minor plaintiff, Robert Green, was injured by a runaway trash cart at a 7-Eleven Store and as a result brought suit against 7-Eleven Food Stores, Inc., The Southland Corporation and Warren Harmon as defendants jointly or severally.

The corporate defendants, Elgin Leach Corporation and Thru Way Equipment Corporation, were joined as additional defendants. It is the attempted joinder of the last captioned additional defendant, the Leach Corporation, the manufacturer of the cart, that is in issue.

The named corporate defendants, 7-Eleven Food Stores, Inc., and Southland Corporation, filed a writ to join Leach Corporation ("Leach") as an additional defendant on April 19, 1968. Leach being a Wisconsin corporation, the writ was served by registered mail on the Secretary of the Commonwealth of Pennsylvania on May 28, 1968, and on Leach in Wisconsin on June 7, 1968.

Leach thereafter filed the preliminary objections now before us to strike down its joinder as an additional defendant on the ground that (1) its principal office is in Oshkosh, Wisc.; (2) it is not registered to do business in Pennsylvania; (3) it maintains no office or place of business in Pennsylvania; (4) does no business in Pennsylvania within the scope of the Business Corporation Law of May 5, 1933, P. L. 364, Art. X, sec. 1011, as amended through 1966, January 18, P. L. (1965) 1305, sec. 46, 15 PS §2011. Therefore, it is not subject to service through the Secretary of the Commonwealth and is beyond the jurisdiction of the Pennsylvania Courts.

The Business Corporation Law provides for service upon the Secretary of the Commonwealth in cases wherein the courts of the Commonwealth have

jurisdiction vested by section 1011(C) of the code. Prior to the amendment of August 20, 1968, section 1011(C) read as follows:

"C. For the purposes of determining jurisdictions of courts within this Commonwealth, the entry of any corporation into this Commonwealth for the doing of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose, with the intention of thereby initiating a series of such acts, shall constitute 'doing business.'"

The section was amended by the amendment of August 20, 1968, as follows:

"C. For the purposes of determining jurisdictions of courts within this Commonwealth, the doing by any corporation in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose, with the intention of thereby initiating a series of such acts, shall constitute 'doing business.'"

And amended further by this addition, effective August 20, 1968:

"For the purposes of this subsection the shipping of merchandise directly or indirectly into or through this Commonwealth shall be considered the doing of such an act in this Commonwealth": Act of July 20, 1968, No. 216, sec. 54, 15 PS Supp. §2011. (To become effective August 20, 1968.)

The amendment of July 20, 1968, would appear to end such issues as the one before us here, and Leach's preliminary objection would have to be dismissed. However, the amendment is inapplicable to this case, because service was made at the latest on June

7, 1968, upon Leach, more than two months before the effective date of the amendment. The controlling law as respects jurisdiction is that which is in effect on the date of *service*: Myers v. Mooney Aircraft, Inc., 429 Pa. 177, 240 A. 2d 505.

The 1968 amendment adds a further test toward putting down the uncertainty between the dichotomy of "doing business in" and "not doing business in" Pennsylvania. Shipping goods into or through is "doing business in." This represents legislative thinking as to the scope or embrace of the words "doing business in." Modern business methods and operations dictate this more realistic and pragmatic conclusion. There is, then, no reason why we may not consider shipping merchandise into the State indicia of "doing business in," to further support our conclusion here.

In this case, defendant, Leach, filed answers to interrogatories, taking the classic position that it is not doing business in Pennsylvania because: (a) Leach is incorporated in Wisconsin and owns no property in Pennsylvania; (b) it is not registered in Pennsylvania; (c) it manufactures and sells refuse collection units and containers of a specialized type, and supplies repair parts; (d) it sells units and parts to defendant, Thru Way (in eastern Pennsylvania at Conshohocken, Pa.) and A. H. Equipment Company (in western Pennsylvania at Carnegie, Pa.); (e) Leach provides no services to the ultimate customer; this is provided by Thru Way and A. H. Equipment Company; (f) Thru Way and A. H. Equipment are the only distributors in Pennsylvania, but are not franchised, owned or controlled by Leach; (g) all sales were made at Oshkosh, Wis.; (h) Leach sold in excess of $500,000 yearly in each of the years 1965 through 1969; (i) Leach has no sales representatives, agents,

dealers or salesmen in Pennsylvania authorized by it to receive or solicit orders in Pennsylvania; and finally, (j) the president, one David Leach, and the treasurer, one Chester Skoner, yearly make one or two trips to visit the offices of Thru Way and A. H. Equipment.

With this, Leach would have us believe its operation here is chancy, isolated, sporadic and entirely by the happenstance of Thru Way's and A. H. Equipment's graces and with little or no direction and motivation on its part. We think quite the contrary. It was and is doing business in Pennsylvania though behind a facade.

"The legislature has defined what constitutes 'doing business' under §1011C [prior to August 20, 1968] as an 'entry' of a foreign corporation into Pennsylvania for either of two purposes: (a) 'for the doing of a series of similar acts' to realize pecuniary profit or accomplishing an object or (b) 'doing a single act' for such purpose, intending to initiate a 'series of such acts.' *The statute contemplates a systematic course of conduct* as contrasted with isolated or sporadic occurrences": Myers v. Mooney Aircraft, Inc., 429 Pa. 177, 240 A. 2d 505. (Italics supplied.)

Behind the facade of the two dealers for Leach we find: (a) Leach sold exclusively for the past five years (1965 through 1969) to only two dealers or distributors in Pennsylvania; (b) for the same years it maintained a consistent level of sales in excess of $500,000 each year; (c) it sells only to the two dealers and all repairs are effected through them with parts supplied by Leach; (d) its principal officers *personally and regularly* each year visit these two dealers, and we may assume there are other regular communications also; and (e) the item sold is not a small fixture or appliance, but a large unit, some of which are truck-size, needing service and parts made for such units, and hardly, therefore, sold with-

out some assurance of such service and parts as and when needed, which depends upon a close working arrangement between distributor and Leach.

This is a continuous operation and, on the whole, maintained by a systematic course of conduct designed and created to promote, insure and protect the sales of Leach products in Pennsylvania as its single objective, and to realize for Leach a pecuniary benefit. Without a close relationship between Leach and Thru Way and A. H. Equipment, it is difficult to imagine any sales of the product in Pennsylvania. The inescapable fact to be deduced from Leach's position, product and operation is that Thru Way and A. H. Equipment Company were de facto dealers and franchise holders for Leach in Pennsylvania, in reality dependent upon Leach and, therefore, under its control. Cf. Frisch v. Alexson Exquipment Corporation, 423 Pa. 247, 224 A. 2d 183; and Burt v. Niagara Machine and Tool Works, 301 F. Supp. 899.

The factual situation existent in Myers, supra, and relied upon by Leach, is not as dissimilar to that existent here, as it is similar and consistent. Any dissimilarities are only in degree and inconsequential; the essentials are the same.

We would conclude that while the law prior to Myers and, of course, prior to the here inapplicable 1968 amendment, represents more groping in the dark than clear guidance, the test set out in Myers and quoted heretofore accurately and precisely represents the judicial exposition of the test for the statute. It is the "series of similar acts" in the context of selling its product that brings Leach within the statute, and hence within our jurisdiction.

## ORDER

And now, July 3, 1970, the preliminary objections of additional defendant, the Leach Corporation, to the complaint of defendants, 7-Eleven Food Store,

Inc., and Southland Corporation, are hereby dismissed. The Leach Corporation is granted 20 days from the date of this order to file a responsive pleading to said defendants' complaint.