ACKER, J.,
— The matter for determination arises from a preliminary objection to a complaint to join an additional defendant in the nature of a motion to dismiss for lack of jurisdiction over the person, because of improper venue and on the ground of forum non conveniens. The preliminary objection also alleges a demurrer, but the latter is not required to be disposed of in view of our holding that neither additional defendant nor the subject matter is properly before this court.
A short recital of the alleged facts as learned from the pleadings is of assistance. The action is in assumpsit. On May 1, 1968, Overseas National Airways, Inc., entered into an oral agreement with defendants to provide air transportation on May 2, 1968, for members of the Youngstown Elks Club of Youngstown, Ohio, to Las Vegas, Nev., for which defendants agreed to pay $7,875. Transportation was furnished. The Youngstown Elks Club paid to defendants $7,875, but defendants have failed and continue to refuse to pay to plaintiff the moneys owing. The complaint to join additional defendant recites that Freddie Swartz, additional defendant, is an individual residing at 1176 Beverwil, Los Angeles, Calif., and that on or about the first week in September of 1967, he represented to defendants that he was the president of Groups West, which represented all charter airline carriers and was a wholesaler and represented various carriers, including plaintiff carrier. Thereafter, arrangements were made with additional defendant to secure transportation for the Youngstown Elks. Defendants claim that they paid additional defendant the sum of $12,696.75 *24 for the flight.[1] Although the complaint to join additional defendant does not specifically state that additional defendant failed to pay plaintiff, it may reasonably be inferred by the allegation that defendants have made repeated demands on additional defendant to pay plaintiff. Therefore, from these allegations we learn that the contract was apparently not entered into in the State of Pennsylvania, additional defendant was not doing business in Pennsylvania and the transportation was not furnished in Pennsylvania. It is claimed, however, that because additional defendant has caused “harm” within this Commonwealth, jurisdiction is granted to this court. There are no cases interpreting this recent statute.
The contention of defendant that because additional defendant entered a general appearance by praecipe prior to the filing of the preliminary objection is readily dismissed by reference to the 1966 amendment to Pa. R. C. P. 1012: “A party may enter a written appearance which shall state an address within the Commonwealth at which papers may be served. Such appearance shall not constitute a waiver of the right to raise any defense including questions of jurisdiction or venue.” The addition of the last sentence to the rule followed the holding of Monaco v. Montgomery Cab Company, 417 Pa. 135, 208 A. 2d 252 (1965).[2]
Defendant contends, however, that jurisdiction is granted in this case by application of the most recent amendment to the “Long-Arm Statute” in Pennsylvania.[3] This statute provides, inter alia, that “. . . any *25 non-resident of this Commonwealth who, acting outside of the Commonwealth . . . shall have caused any harm within this Commonwealth, shall be subject to service of process in any civil action or proceedings instituted in the courts of the Commonwealth of Pennsylvania, arising out of or by reason of any such conduct; service of process in any such civil action or proceeding shall be effected through the Secretary of the Commonwealth as herein provided.” Jurisdiction can only be considered upon an in personam basis, for there is no allegation warranting an in rem consideration. Jurisdictional considerations are only as to the person of defendant.
It would appear that a literal meaning as desired by defendant would include every person in Pennsylvania who is “hurt” by any transaction that may occur in any other State. Defendants interpret this suit as a “harm.” “Harm” as defined by Webster’s New World Dictionary, College Edition, means, “Hurt; injury; damage, impairment.” “Harm,” as taken from the World Book Dictionary, means, “Hurt; damage; to damage; to injure or hurt causing pain, loss or suffering of any kind or damage suggests lessening of value, usefulness, or appearance of a person or thing.” “Harm” by Restatement of Torts 2d, §7(2), implies the existence of material and tangible detriment. By Restatement of Torts, sec. 848, “harm” is defined as a loss or detriment of any kind resulting from any cause. Restatement of Property, sec. 189, comment (i), informs us that “harm” is an interference with some desire of an owner of property interest with reference to such interest. It does not connote that the actor is obligated to pay damages, nor that he is otherwise sub *26 jected to remedial interference in favor of the person harmed.
It can, therefore, be said that “harm” carries many possible meanings.
Additional defendant’s interpretation of the statute is that it is applicable to tortious acts which are performed outside of the Commonwealth, resulting in harm or injury within the Commonwealth. An example of this contention might be the construction of a faulty tank for storage of noxious chemicals out of the State which causes injury when used within the State. A reading of the sections of the statute in issue lends some support to the contentions of both parties. Section 1 of the statute is designed to extend jurisdiction to any nonresident who commits a tortious act within the Commonwealth,[4] sections 2 and 4 to doing business.
*27 Therefore, Pa. R. C. P. 2077(a)(1), which applies to actions as to which the laws of the Commonwealth authorize service of process upon a nonresident, applies to section 1 of this statute. Pa. R. C. P. 2077(a)(2), which permits actions upon a nonresident engaged in business, encompasses sections 2 and 4 of the statute. The latter section permits service where the nonresident within the Commonwealth does a series of similar acts for the purpose of realizing pecuniary benefit or otherwise accomplishing an object, or does a single act with the intention of initiating a series of such acts, or the shipping of merchandise directly or indirectly into or through the Commonwealth, or in engaging in any business or profession within the Commonwealth whether or not licensure or approval of the Commonwealth is required. The difficulty, however, arises from section 3, which permits actions against nonresidents if (1) they are acting outside of the Commonwealth and (2) have caused any harm within this Commonwealth. It does not really fall into any category. Defendant says that by additional defendant failing to pay plaintiff moneys sent to it for that purpose, they are “harmed” by conduct of additional defendant acting outside of the Commonwealth. If this be so, every person within the Commonwealth of Pennsylvania who asserts that through dealings with persons out of the Commonwealth which have no relationship to the Commonwealth and did not occur within the Commonwealth he is harmed, can sue that nonresident within the Commonwealth. Such an interpretation, in effect, places every nonresident within the jurisdiction of this court by an assertion of harm by a resident. Does this meet the minimum contact rule as announced by the United States Supreme Court? [5]
*28 As previously noted, section 3 of the statute for interpretation does not distinguish between a tort or doing business to grant jurisdiction. In that sections 1 and 2 of the statute specifically deal with those subjects, it appears that this is an effort to give an entirely new basis of jurisdiction. It must meet the minimal contacts test. As a guide, attention is directed to Restatement of Judgments, sec. 23, which deals with jurisdiction. It provides that “A court by proper service of process may acquire jurisdiction over an individual not domiciled within the State who does acts or owns things in a State which are of a sort dangerous to life or property, as to causes of action arising out of such acts or such ownership, if a statute of the State so provides at the time when the cause of action arises.” By caveat, the institute expresses no opinion as to whether this action may extend to cover acts or things not dangerous to life or property.
It would appear that section 1 of our statute does not require that the acts or things be of a sort dangerous to life or property. However, it also appears that *29 section 3, if the interpretation requested by defendant is granted, would apply whether or not there is any act or thing in the forum State to submit a nonresident defendant to its jurisdiction.
It is the opinion of this court that under the joinder attempted in this case, there are insufficient “minimum contacts” to permit the joinder now under attack.[6] It offends traditional notions of fair play and substantial justice.
Wherefore, the preliminary objection to the complaint to join additional defendant is sustained.
ORDER
And now, March 2, 1971, the preliminary objection in the nature of a motion to dismiss the complaint to join additional defendant because of lack of jurisdiction over the person is sustained.

 Although the pleadings do not tell when they paid additional defendant, it must have been prior to filing the complaint to join on November 6, 1970. A “long-arm-statute” is applicable even if the occurrence was prior to the effective date of the statute: Myers v. Moody Aircraft, Inc., 429 Pa. 177, 184, 240 A.2d 505 (1967).

 See also, Casey v. Donut Fair, Inc., 211 Pa. Superior Ct. 323, 236 A. 2d 546 (1967)

 The Act of July 1, 1970, P. L. 444, 12 PS §343, which became *25 effective July 1, 1970. Registered mail service was attempted on additional defendant November 12, 1970, and the Secretary of the Commonwealth November 10,1970. Therecent statuteisnot designed just for doing business, but for “Actions against Non-Residents.”

 The constitutionality of such a statute is sustained in Rosenblatt v. American Cyanamid Company, 86 S. Ct. 1, 382 U.S. 110, 15 L. Ed. 2d 192, rehearing denied at 382 U.S. 1002, 86 S. Ct. 256. Previously, authorization for service upon a nonresident was limited to a nonresident operator or owner of a motor vehicle or motor boat by reason of an accident or a collision (Act of November 10, 1959, P. L. 1459, Sec. 1, 75 PS §2001, et seq., as amended by the Act of June 4, 1969, P. L. 65, sec. 1, and the Act of December 17, 1969, P. L. 380, sec. 1); an operator or owner who accepts the privilege of operating or owning aircraft, or having the same operated or owned in the Commonwealth of Pennsylvania, or of using aviation facilities in Pennsylvania by reason of any accident or collision occurring within the State (Act of February 23, 1956, P. L. (1955) 1081, sec. 1, 2 PS §1410); and a nonresident owning real estate in Pennsylvania by reason of which an accident or injury occurs: Act of July 2, 1937, P. L. 2747, sec. 1, 12 PS §331. These statutes, however, have limited their application to incidents involving or arising out of the actual use or ownership of the instrumentality: Lykens v. American Cast Iron Pipe Company, 295 F. Supp. 895 (D. C. W. D. Pa. 1969); Wilson v. Armstrong, 242 F. Supp. 612 (D. C. E. D. Pa. 1965), Leport v. White River Barge Line, 215 F. Supp. 220 (D. C. W. D. Pa. 1961), affirmed 315 F. 2d 129 (1963); Messick v. Gordon, 434 Pa. 30, 252 A. 2d 627 (1969); Betcher v. Hay-Roe, 429 Pa. 371, 240 A. 2d 501 (1968); Farraro v. Crowell et al., 198 Pa. Superior Ct. 222, 182 A. 2d 98 (1962).

 This test was first announced in Pennoyer v. Neff, 95 U.S. 714, 24 L. Ed. 565 (1877), which established that the due process clause of the Fourteenth Amendment is violated where a court renders a personal judgment against a nonresident individual defendant without having jurisdiction of him. Such a judgment as a mat *28 ter of due process cannot be granted jurisdiction merely by serving process upon a defendant outside the forum or by publication. In International Shoe Co. v. Washington et al., 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154, 161 ALR 1057 (1945), Chief Justice Stone noted that the prerequisite of the presence of defendant in the jurisdiction has been modified if defendant had “certain minimal contacts” with the forum of the suit and it does not offend “our traditional conception of fair play and substantial justice.” The United States Supreme Court in Hanson et al., v. Denckla et al., 357 U.S. 235, 251, 2 L. Ed. 2d 1283, 1296, 78 S. Ct. 1228 (1958), reh. den. 358 U.S. 858, 3 L. Ed. 2d 92, 79 S. Ct. 10, held that the restrictions are more than a guarantee of immunity from inconvenience or distant litigation but a consequence of territorial relations on the power of the respective State; and that, however minimal the burden of defendant in a foreign tribunal, a defendant may not be called upon to do so unless he has had the “minimal contacts” with that State which are a prerequisite to its exercise of power over him.

 This court is not passing upon the constitutionality of the statute. Many examples may be envisioned where the “minimum contact” theory would be satisfied by use of section 3 of the statute. It merely holds this factual situation is not one of them.