Ruben P. ROSEN

v.

Irwin SOLOMON and John A. Coe, Jr.

Civ. A. No. 73-2793.

United States District Court,
E. D. Pennsylvania.

April 18, 1974.

Edward Greer, Philadelphia, Pa., for plaintiff.

Alfred H. Wilcox, Jeffrey Charles Hayes, Norman R. Bradley, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

Plaintiff and defendants, Solomon and Coe, entered into a stock option agreement. Upon notice by the plaintiff that he intended to exercise the option, defendants allegedly defaulted. Thereafter, plaintiff commenced this action and defendant Coe has moved to dismiss the complaint for lack of jurisdiction over the person pursuant to F.R.Civ.P. 12(b)(2) and for insufficiency of service of process pursuant to F.R.Civ.P. 12(b)(5). The relevant facts as they pertain to this motion are as follows:

On August 31, 1971, defendants' attorney met with plaintiff's attorney in Philadelphia in order to negotiate the agreement in issue. As a result of the negotiations, the agreement was prepared in Philadelphia and forwarded to defendants' attorney in New York for execution by the defendants. Upon the return of the agreement, it was signed by plaintiff in Philadelphia. The agreement provided in paragraph 9:

> "This agreement, made and to be performed in the Commonwealth of Pennsylvania, comprises the entire agreement among the parties with respect to the subject matter hereof. This agreement shall be construed in accordance with the laws of the Commonwealth of Pennsylvania . . .".

Plaintiff subsequently exercised the "put" option, scheduling the closing in Philadelphia. The exercise of the option was continued by agreement, but on January 16, 1973, plaintiff finally exercised the option.

In defendant Coe's affidavit, he indicates that he has been a California resident since 1969 and from that date to the present, he has not been in Pennsylvania nor has he transacted any business in Pennsylvania. He further avers that he was not present in Pennsylvania for the negotiation of the agreement or any transaction in connection therewith and that he executed the agreement in California. In addition, he avers that he is not engaged in business in Pennsylvania and has authorized no agent to represent him in Pennsylvania. Finally, the affidavit states that since 1969, he did no acts in Pennsylvania for the purpose of realizing pecuniary benefit; that he has shipped no merchandise directly or indirectly into Pennsylvania; and that he owns no real estate in Pennsylvania.

In his complaint, plaintiff alleges that personal jurisdiction over the defendants is founded upon the recently enacted Pennsylvania long arm statute, 42 P.S. § 8301 et seq. Defendants were served pursuant to 42 U.S.C. §§ 8307, 8308.

## A. The Pennsylvania Act

The relevant portions of the Pennsylvania Act with which we are concerned are 42 P.S. §§ 8303–8305. Section 8303 is clearly inapplicable, since no tortious act is alleged and we are concerned with an action alleging breach of contract. Plaintiff contends that Section 8304 is applicable and its provisions have been satisfied in that Coe through his agent did business in Pennsylvania. Section 8304 provides in pertinent part:

> "§ 8304. Doing business by individuals
>
> "Any nonresident of this Commonwealth who, acting individually under or through a fictitious business name, or through an agent, servant or employee, shall have done any business in this Commonwealth on or after August 30, 1970 . . . shall be conclusively presumed to have designated the Department of State as his agent for the receipt of service of process in any civil action or proceeding instituted in the courts of this Commonwealth against such individual . . .".

Thus, the threshold question is whether defendant through his attorney agent was "doing business" in Pennsylvania

within the meaning of Section 8309. Section 8309 provides:

> "§ 8309. Acts affecting jurisdiction
>
> "(a) General rule. Any of the following shall constitute 'doing business' for the purposes of this chapter:
>
> (1) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.
>
> (2) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.
>
> (3) The shipping of merchandise directly or indirectly into or through this Commonwealth.
>
> (4) The engaging in any business or profession within this Commonwealth, whether or not such business requires license or approval by the Commonwealth or any of its agencies.
>
> (5) The ownership, use or possession of any real property situate within this Commonwealth."

We are here concerned only with subsection 2 of this provision, pertaining to the doing of a single act in the Commonwealth for the purpose of thereby realizing pecuniary benefit.[1] In Aamco Automatic Transmissions, Inc. v. Tayloe, 368 F.Supp. 1283 (E.D.Pa.1973) (Van-

Artsdalen, J.), the Court noted that the language of subsections (a)(1) and (a)(2) was identically reproduced from the prior statute, 15 P.S. § 2011, subd. C and, therefore, held that the "series . . . single act" language of the prior act was not altered by the subsequent amendment. Accordingly, the Court concluded that the cases construing the "series . . . a single act" language of the old statute remain relevant in the interpretation of subsections (a)(1) and (a)(2) of the new statute".[2] Two such cases, which were decided under the prior act, are Gorso v. Bell Equipment Corp., 476 F.2d 1216 (3d Cir. 1973) and Myers v. Mooney Aircraft, Inc., 429 Pa. 177, 240 A.2d 505 (1967). In *Myers,* which was followed by *Gorso,* the Court held:

> ". . . [t]he statute contemplates [by the 'series . . . or single act' language] a systematic course of conduct as contrasted with isolated or sporadic occurrences." 429 Pa. at 185, 240 A.2d at 510.

Since the negotiation of the agreement and the events leading to its ultimate breach constitute an integrated transaction, rather than a "systematic course of conduct", we conclude that defendant Coe was not "doing business" in Pennsylvania within the meaning of Section 8309(a)(2).

Plaintiff additionally relies on Section 8305 of the long arm statute, providing

---

1. It is undisputed that subsections 3 through 5 are inapplicable in that plaintiff does not challenge Coe's affidavit to the effect that he has shipped no merchandise directly or indirectly into or through Pennsylvania; that he is not engaged in any business in Pennsylvania; and that he does not own, use or possess any real property in Pennsylvania. We conclude that subsection 1, concerning the "doing by any person . . . of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object", is likewise inapplicable, since the negotiation of the contract and subsequent nonperformance thereof constitutes a single integrated transaction, rather than a "series of similar acts".

2. In this respect the most significant change in the new statute is the addition of Section 8309(a)(3) pertaining to "the shipping of merchandise directly or indirectly into or through this Commonwealth". Under the prior statute, a single shipment of merchandise into or through Pennsylvania would not constitute "doing business" absent a finding of "systematic and continuous conduct". *See* Gorso v. Bell Equipment Corp., 476 F. 2d 1216 (3d Cir. 1973). Under § 8309(a)(3) the fact of shipment into the Commonwealth, standing by itself, subjects the acting party to the reach of the new statute. Aquarium Pharmaceuticals, Inc. v. Industrial Pressing & Packaging, 358 F. Supp. 441 (E.D.Pa.1973). This provision as previously indicated, is inapplicable under the facts of this case.

for personal jurisdiction over a non-resident who "shall have caused harm within this Commonwealth". Section 8305 provides:

"Causing harm by individuals

"Any nonresident of this Commonwealth who, acting outside of this Commonwealth, individually, under or through a fictitious business name, or through an agent, servant or employee, shall have caused any harm within this Commonwealth on or after August 30, 1970, shall be subject to service of process in any civil action or proceeding instituted in the courts of this Commonwealth arising out of or by reason of any such conduct. Service of process in any such civil action or proceeding shall be effected through the Department of State as provided in this chapter."

Coe argues that Section 8305 is limited to tortious acts by nonresidents, acting outside of the state, which cause harm in Pennsylvania. Plaintiff, on the other hand, would find no such limitation, and argues that he suffered financial injury or "harm" by reason of defendants' default under the stock option agreement. ■■ No court has made a definitive ruling as to the scope of harm provision contained in Section 8305. Since Section 8303 specifically makes reference to tortious acts, and any such reference is omitted from Section 8305, this would support the conclusion that its scope is not so limited. In the most closely analogous case construing the "harm" provision, the Court in Aamco Automatic Transmission, Inc. v. Tayloe, *supra*, held:

"Section 8305, which merely requires the causation of any harm within the state, is likewise satisfied as plaintiff suffered some injury in Pennsylvania by reason of defendant's torts."

The torts referred to in that action were conspiracy and intentional interference with contractual relations, and the injury referred to was loss of income and profits and other substantial damage to plaintiff's trade name and reputation. Thus, under *Aamco* the "harm" required to support personal jurisdiction over the defendant is not restricted to personal injuries, but may also be financial injury, such as income and profits. Since there is no language whatsoever in Section 8305 which would limit its application to tortious acts and since "harm" under that provision pertains to monetary injury, we conclude that defendants' alleged default under their agreement caused "harm" within the Commonwealth and, accordingly, Section 8505 supports personal jurisdiction over the defendants.

**B.** *The Constitutional Test*

Our inquiry does not end here, for we must now determine whether our assertion of personal jurisdiction over the defendants would run afoul of due process standards established by the United States Supreme Court. The watershed decision in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), established the general test:

". . . due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'." Id. at 316, 66 S.Ct. at 158 (citations omitted)

This test does not lend itself to mechanical application, and, therefore, must be applied on an ad hoc case-by-case basis. Aquarium Pharmaceuticals, Inc. v. Industrial Pressing & Packaging, *supra*. Under this flexible standard, the courts have not been reluctant to expand the concept of personal jurisdiction in conjunction with recent developments in modern transportation and communication. *See e. g.* McGee v. International Life Insurance Co., 355 U.S. 220, 222–223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). *McGee* is relevant in the context of this

action in that defendants' only contacts with the forum state were that it mailed a life insurance policy to the forum state and thereafter received the payment of premiums by mail from that state. It otherwise did no business in that state, and in sustaining personal jurisdiction over defendant, the Court held:

> "It is sufficient for the purposes of due process that the suit was based on a *contract* which had *substantial connection* with that state." [citations omitted] 355 U.S. at 223, 78 S.Ct. at 201.

Since we are concerned with a contract in this action, we must determine under *McGee* whether the contract had substantial connection with this state.

■■ In determining whether a contract has a substantial connection with the forum state, it is immaterial that the contract in question may have had significant connections with states other than the forum state. *Gardner Engineering Corp. v. Page Engineering Co.* 484 F.2d 27 (8th Cir. 1973). In *Page Engineering,* the Court of Appeals added guidelines to aid the courts in determining whether the *McGee* "substantial connection" standard has been satisfied. *See also* Aftanase v. Economy Baler Corp., 343 F.2d 187, 197 (8th Cir. 1965). The three primary factors to be considered are: (1) the quantity of the contracts, (2) the nature and quality of the contracts, and (3) the source and connection of the cause of action with those contacts. Other secondary factors which might be considered are the interest of the forum state and convenience.

■ In applying these standards to the facts of the instant action the contract had numerous contacts in Pennsylvania; the most significant of which is the fact that it was negotiated in Philadelphia. Other significant contacts were the mailing of the agreement to Pennsylvania following its execution by defendants, the execution of the contract in Pennsylvania by plaintiff, the scheduled closing for the exercise of the option in Philadelphia, the subsequent agreement to extend the exercise of the option, and the final exercise of the option in Philadelphia. Secondly, as to the nature and quality of the contacts,[3] the agreement, which was negotiated and ultimately executed in Pennsylvania, provided that it was to be construed in accordance with the laws of Pennsylvania. In agreeing to this provision, defendants invoked the benefit and protection of the laws of Pennsylvania, and could reasonably have foreseen that any subsequent breach on their part would have consequences in Pennsylvania. Absent the negotiations and execution of the agreement in Pennsylvania, no contract would have existed and, accordingly, the Pennsylvania contacts are of extreme significance. Finally, there is a direct connection between the negotiation and execution of the agreement in Pennsylvania and plaintiff's cause of action to remedy the default thereunder.

While the secondary factors are less significant where the primary guidelines are satisfied, Pennsylvania has a clear interest in the enforcement of contracts negotiated in Pennsylvania and governed by its law. As to convenience, it is no more inconvenient for the defaulting parties to appear in Pennsylvania to defend their actions than for plaintiff to pursue his remedy in California. Accordingly, under the standards set forth in *Page Engineering,* we conclude that the contract in issue has a "substantial connection" with the forum state, thereby satisfying the "minimum contact" requirement of *International Shoe.* Upon a finding that the statutory and consti-

---

3. In *Page Engineering,* the Court used the term "nature" to refer to the directness of the contact with the forum state in an attempt to determine whether the party, by his affirmative action, has invoked the benefit and protection of the forum's laws and could reasonably have anticipated its act would have consequences in the forum state. The term "quality" refers to the importance of the contact to the whole transaction between the parties. 484 F.2d at 32.

tutional tests relating to personal jurisdiction are satisfied, defendant Coe's motion to dismiss the complaint for lack of personal jurisdiction will be denied.[4]

## C. *Service of Process*

The procedure for service of process under the long arm act is set forth in 42 P.S. §§ 8307–8308.[5] Basically, the requirements for service of process under Section 8307 provide that process shall be served by registered or certified mail upon the Department of State and upon the defendant at his last known address. Defendant Coe argues that the service of process was deficient in two respects. First, he argues that the Department of State was not served since the Marshal's records contain no return receipt from the Department of State as required by Section 8307. Plaintiff responds by explaining that the Marshal's office served both defendants by mailing both copies of the complaint to the Department of State in the same envelope, and that the return receipt received by the Marshal's office

applies to both defendants. This explanation is supported by exhibits and is not challenged by defendant. Thus, defendants' motion to dismiss the complaint on this ground will be denied. Secondly, defendant argues that defendant Coe was not personally served since the return receipt was signed by one "Margret Coe" and no address is given. Preliminarily, we note that under Pa.R.Civ.P. 1009(b), 12 P.S. Appendix, process may be served by handing a copy of the summons and complaint to an adult member of the family with which he resides. Plaintiff responds that Margret Coe is either defendant's wife or another adult member of his family. While we are unable to make a factual determination of this issue on the record before us, we believe the burden of showing insufficient service of process should be placed upon the moving party and, accordingly, we will deny defendants' motion to dismiss the complaint on this ground without prejudice to its renewal in the event it is shown that "Margret Coe" is not a person designated by that appropriate rule to receive service of process.

---

4. At this point, we note that while Section 8309(b) extends the jurisdiction of Pennsylvania courts and the federal courts situated therein over foreign corporations to the fullest extent allowable under the Constitution of the United States, it does not so provide as to nonresident individuals. We do not seek to subject the individual defendants to undue hardship in requiring them to defend their actions in Pennsylvania. Nonetheless, the substantial contacts which the contract had with this jurisdiction and the resultant harm caused by its breach, satisfying both the statutory and constitutional tests, convince us that defendants may not insulate themselves from the consequences of their default by asserting hardship or inconvenience.

5. § 8307. Procedure for service of process
   "Process directed to persons under this chapter shall be served, by the officer to whom such process shall be directed, upon the Department of State, by sending by registered or certified mail, postage prepaid, a true and attested copy of such process, with the fee required by law, and by sending to the defendant, by registered or certified mail, postage prepaid, a true and attested copy thereof, with an endorsement thereon of the service upon the

Department of State, addressed to such defendant at his last known address. The Department of State shall keep a record of the day and hour of the service of such process on it. The registered or certified mail return receipts of the Department of State and of such defendant shall be attached to and made a part of the return of service of such process, except that if the defendant refuses to accept the notice mailed, or cannot be found at his last known address, the registered or certified mail return receipt or other evidence of such facts shall be attached to and made a part of the return and shall constitute sufficient service under the provisions of this section. The fee paid by the plaintiff to the Department of State at the time of the service shall be taxed as costs to the plaintiff, if he prevails in the action necessitating the service of the process."
   § 8308. Federal actions
   "Where process is issued against any corporation or individual by any court of the United States empowered to issue such process under the laws of the United States, the Department of State is authorized to receive such process in the same manner and with the same effect as provided in this chapter for process issued by the courts of this Commonwealth."