476 F.2d 1216
 James A. GORSO
v.
BELL EQUIPMENT CORPORATION, a corporation,
v.
The MARLEY COMPANY, a corporation and Societe de
Construction Mecaniques de Bugey and Tichauer et Cie.
Appeal of SOCIETE DE CONSTRUCTION MECANIQUES DU BUGEY and
Tichauer et Cie, in No. 71-2035, (five cases).
Jack CHICONELLA
v.
BELL EQUIPMENT CORPORATION, a corporation,
v.
The MARLEY COMPANY, a corporation and Societe de
Construction Mecaniques du Bugey and Tichauer et Cie.
Clyde A. TEVIS
v.
BELL EQUIPMENT CORPORATION, a corporation,
v.
The MARLEY COMPANY, a corporation and Societe de
Construction Mecaniques du Bugey and Tichauer et Cie.
Harry J. PHILLIPS
v.
BELL EQUIPMENT CORPORATION, a corporation,
v.
The MARLEY COMPANY, a corporation and Societe de
Construction Mecaniques du Bugey and Tichauer et Cie.
Amedio VITALE
v.
BELL EQUIPMENT CORPORATION, a corporation,
v.
The MARLEY COMPANY, a corporation; Societe de Construction
Mecaniques du Bugey, and Tichauer et Cie.
 Nos. 71-2035 to 71-2039.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 14, 1972.
Decided March 2, 1973.
As Amended April 5, 1973.
 
 Kim Darragh and Raymond H. Conaway, of Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, Pa., for appellant.
 James E. Coyne, Lancaster, Mentzer, Coyne & Duffy, Pittsburgh, Pa., for appellee.
 Before SEITZ, Chief Judge, and ALDISERT and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Chief Judge.
 
 
 1
 This appeal arises out of the denial by the district court, 330 F.Supp. 834, of a motion to dismiss two impleaded defendants for lack of personal jurisdiction. The district court certified the question for interlocutory appeal pursuant to 28 U.S.C. Sec. 1292(b), and this court accepted the appeal. Pennsylvania law applies since federal jurisdiction here is predicated upon diversity of citizenship.
 
 
 2
 Appellants are two French companies, Societe de Construction du Bugey and Tichauer et Cie. The former manufactures a tower crane used in the construction industry; the latter is its exclusive world sales agent. These two companies were impleaded by the original defendant and present appellee, Bell Equipment Corporation. Bell is a New York corporation which previously represented appellants in the United States as their national sales agent. Bell has maintained an office in Pennsylvania at all times relevant to this suit.
 
 
 3
 Through Bell, one of appellants' tower cranes was sold in December, 1965 to the Marley Company, a Kansas corporation engaged in construction.[1] It was delivered in February, 1966 to a Marley jobsite in Beverley, Ohio and was used on that site until its completion in early 1968. That February, it was moved to a new jobsite at Huff, Pennsylvania. Bell aided Marley in setting up the crane at both the Beverley and the Huff sites. In October, 1968, while being used at Huff, the crane collapsed and injured several workers, plaintiffs herein.[2]
 
 
 4
 The French companies are not registered to do business in the Commonwealth of Pennsylvania nor do they maintain an office in the state. At the time of the sale of the crane, they possessed a national sales agent, Bell; but apparently neither of the two cranes of appellant Societe's manufacture which Bell sold in the United States was sold or delivered in Pennsylvania. However, Bell maintained an office in Pennsylvania throughout this period.
 
 
 5
 By the summer of 1968, Bell had terminated its relationship with appellants. However, even though it had ceased to represent the two French firms, it continued to service in Pennsylvania the crane which it had sold to Marley.
 
 
 6
 While the crane was being used at Huff, individual delivery on six orders was made to the jobsite from the Societe factory in France by appellant Tichauer. Five of these orders had been placed by Marley on December 1, 1967, some three months prior to the removal of the crane to Pennsylvania; we believe these five orders constitute one transaction. A sixth order was also placed; however, on the record before us, it is impossible to determine when it was made. For purposes of our decision, we will assume it was made subsequent to the crane's removal to the Huff jobsite and represents a separate transaction. Marley was forced to order these parts directly from appellants in France because by that time, Bell had ceased to represent the two French firms. No solicitation by appellants was involved; rather, Bell had advised Marley to contact appellants directly since there was no domestic distributor of the parts These parts were ordered from, and invoiced to, Marley's central office in Kansas City, Missouri. They were dropshipped to the Pennsylvania construction site.
 
 
 7
 After a hearing, the district court concluded that sufficient contacts existed between Pennsylvania and appellants for personal jurisdiction to lie consistent with both constitutional and state statutory requirements.[3] In reviewing this determination, two questions are posed: (1) whether state statutory requirements in fact have been met; and (2) if so, whether personal service can be made upon appellants consistent with due process requirements of the Fourteenth Amendment.
 
 
 8
 I. THE EVOLUTION OF THE PENNSYLVANIA STATUTE.
 
 
 9
 In 1968, Pennsylvania amended the terms of its "long-arm" statute as applied to foreign corporations so as to extend its reach. It presently states:
 
 
 10
 For the purposes of determining jurisdictions of courts within this Commonwealth, the doing by any corporation within this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose, with the intention of thereby initiating a series of such acts, shall constitute "doing business." For the purposes of this subsection, the shipping of merchandise directly or indirectly into or through this Commonwealth shall be considered the doing of such an act in this Commonwealth.
 
 
 11
 15 P.S. Sec. 2011(C). This was the final step in a series of legislative responses to successive judicial interpretations of amendments to the "long-arm" statute. In each case, the state courts had construed the legislative purpose as not intending to extend jurisdiction over a foreign corporation in a specified instance even though it was constructively present within the state. Each time, the legislature thereafter had amended the statute so as to broaden its scope.
 
 
 12
 For our purposes, only the last two amendments of the statute need be examined. The first amendment in 1963 involved the companion statute to Sec. 2011(C)-Sec. 2011(B) [15 P.S. Sec. 2011(B) (1967)]. Previous to the amendment, the statute had read, in part:
 
 
 13
 Any foreign business corporation which shall have done any business in this Commonwealth, without procuring a certificate of authority to do so from the Department of State, shall be conclusively presumed to have designated the Secretary of the Commonwealth as its true and lawful attorney authorized to accept, on its behalf, service of process in any action arising [out of acts or omissions of such corporation] within this Commonwealth. . . .
 
 
 14
 Based upon this language, the Supreme Court of Pennsylvania had held that before jurisdiction over a foreign corporation would lie, the tortious activity sued upon must have arisen out of an act or omission by the foreign corporation while it was actually present within the state. Rufo v. Bastian-Blessing Co., 405 Pa. 12, 173 A.2d 123 (1961). The legislative response in 1963 was to amend Sec. 2011(C) by striking out the requirement of "acts or omissions" within the Commonwealth-the language upon which the state supreme court had predicated its decision.
 
 
 15
 The second, and most recent, step came in response to judicial interpretations of the "doing business" and "entry" requirements found in the predecessor of Sec. 2011(C). The Superior Court of Pennsylvania construed the statute as not extending jurisdiction over a foreign lamp manufacturer which dealt through independent contractors in Pennsylvania. Cecere v. Ohringer Furniture Co., 208 Pa.Super. 138, 220 A.2d 350 (1966). This decision was based upon the interpretation the Supreme Court of Pennsylvania had given these terms. See, e.g., Miller v. Kiamesha-Concord, Inc., 420 Pa. 604, 218 A.2d 309 (1966). The superior court concluded that although the Commonwealth had the constitutional power to reach the defendants, the legislative intent, as interpreted by the state supreme court, was not to extend state jurisdiction to those limits permissible under due process.
 
 
 16
 Two years later, in 1968, the legislature passed the current version of Sec. 2011(C). It deleted the "entry" requirement and stipulated that "the shipping of merchandise directly or indirectly into or through this Commonwealth shall be considered 'doing business.' " In so doing, the legislature eliminated the requirement of an actual corporate presence as a condition precedent to the exercise of jurisdiction over a foreign corporation. Rather, it made jurisdiction depend upon whether the corporation derived revenues from activity within the state; the distribution and marketing system which it set up for deriving those revenues was rendered immaterial for jurisdictional purposes.
 
 
 17
 An additional factor which has been seen as influencing the passage of the 1968 amendment was the adoption by the Supreme Court of Pennsylvania of the position of Sec. 402A, Restatement of Torts 2d, on strict liability in tort for defective products. The supreme court thereby sought to provide better protection for state residents against defective products. Webb v. Zern, 422 Pa. 424, 220 A.2d 853 (1966). The passage of the amendment complemented these efforts by providing a local forum for suits against foreign manufacturers of such products.
 
 
 18
 II. JUDICIAL INTERPRETATIONS OF THE 1968 AMENDMENT.
 
 
 19
 Since its passage, the Supreme Court of Pennsylvania has not had occasion to consider the new amendment and to define conclusively its scope. However, the federal district courts and the Superior Court of Pennsylvania each have had cases presenting the issue. Of the two cases considered by the superior court, only one provides any guidance; the other diverged onto the issue of whether the foreign corporation could be served consistent with due process mandates.[4]
 
 
 20
 The superior court case relevant for our consideration involved a contract between a foreign corporation and an announcer for one of its subsidiary corporations. The court held the plaintiff had failed to show that either the subsidiary corporation was merely a paper corporation for purposes of convenience or that more than one of these contracts with the parent corporation had been executed with employees of the subsidiary. Therefore, since only the one transaction was shown to have occurred involving the foreign corporation within the Commonwealth, and since there was no basis in the record for piercing the "corporate veil" between the subsidiary and the foreign parent, the latter was not "doing business" within the Commonwealth for purposes of the statute. Lit v. Storer Broadcasting Co., 217 Pa.Super. 186, 269 A.2d 393 (1970).
 
 
 21
 Of those federal district courts which have considered the new amendment, a case before the District Court for the Eastern District of Pennsylvania was most closely analogous to our own. In that case, a crane manufactured by a Swedish company and similar in design to appellants' was being used on a construction project in Philadelphia. While being used on this site, it collapsed and injured several people. As here, the manufacturer had a national distributor; but none of its cranes had been sold in Pennsylvania. The crane which collapsed had been brought in by the purchaser-also a construction company, but only after it had been used on several other jobsites. Service was attempted on the Swedish company, which challenged the jurisdiction of the court. On these facts, the district court held the manufacturer amenable to service.
 
 
 22
 The court focused upon the statutory stipulation that the "[shipment] of merchandise . . . indirectly into . . . this Commonwealth" satisfied the "doing business" requirement. The court concluded that under this language, any product for which there is a national distributor has been "indirectly shipped" into the Commonwealth by the manufacturer whenever it is subsequently brought into the Commonwealth. For purposes of determining whether this indirect shipment has occurred, it is irrelevant who brought the instrumentality into the state. Further concluding the Supreme Court of Pennsylvania had liberally construed the term "doing business"-which had been in the statute prior to the 1968 amendment, the court held the addition of the "indirect shipment" language in the amendment to extend jurisdiction of the state courts to the constitutional limit. Therefore, as to any manufacturer with a national distributor, should his product be brought subsequently into the Commonwealth and while there cause injury due to defective design and/or manufacture, statutory prerequisites for jurisdiction over that manufacturer on a suit arising out of the injury would be satisfied. Benn v. Linden Crane Co., 326 F.Supp. 995 (E.D.Pa.1970).
 
 
 23
 This theory, adopted by the district court in Benn and urged upon us by appellee Bell herein, has been characterized as the "stream of commerce" theory. Its basic premise is that by having a national distributor, the manufacturer has put his product into the national "stream of commerce." Under this theory, the manufacturer need only: (1) have a national distributor; and (2) be able to reasonably foresee that his product might be used anywhere. Therefore, for purposes of a subsequent injury, he is constructively doing business in every state and cannot complain should he thereby become amenable to one state's jurisdiction. If his product should come into a state, and because of the manufacturer's tortious conduct cause injury in that state, he is consequently subject to that state's jurisdiction regardless of who transported the instrumentality of the injury into the state. Applying this to the instant case, appellants did have a national distributor and could reasonably foresee that a construction crane would not be permanently affixed to any site but rather would be transported from jobsite to jobsite. Therefore, under this theory, the subsequent transportation of the crane into the Commonwealth by Marley constituted an "indirect shipment" by appellants for purposes of the statute.
 
 
 24
 Central to this concept of "stream of commerce" is the definition given the term "place of the tort." For these purposes the place of the tort is not where the defective design or manufacture of the product occurred; instead, it is the site at which the tortious conduct culminates in injury. Thus, the defectively designed or manufactured product carries the manufacturer's tortious conduct with it. When that defect finally causes injury, the manufacturer is constructively considered to have committed the tortious act at the site of the injury because that is where the latent defect bloomed into a tort. In fact, this concept of "place of tort" has been adopted in Pennsylvania. See, e.g., Wilk v. Ensign Bickford Co., 421 Pa. 161, 218 A.2d 778 (1966). Therefore, appellee Bell's contention that the cause of the injury here being sued upon was defective design and/or manufacture of the crane alleges a corporate act by appellants within Pennsylvania.
 
 
 25
 The district court in the instant case adopted the theory set out in the Benn opinion as its own and refused to dismiss appellants for lack of jurisdiction. 330 F.Supp. 834, 836 (W.D.Pa.1971).
 
 
 26
 III. THE STATUTORY REQUIREMENT OF "DOING BUSINESS" WITHIN
 
 
 27
 THE COMMONWEALTH.
 
 
 28
 For jurisdiction to lie under Sec. 2011(C), a foreign corporation must do a "series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or . . . a single act in this Commonwealth, . . . with the intention of thereby initiating a series of such acts." The last interpretation rendered this language was in 1967, a year before the current amendment. In construing the "series . . . or a single act" language, which has remained unchanged into the current statute, the court stated: "The statute contemplates a systematic course of conduct as contrasted with isolated or sporadic occurrences (Greco v. Bucciconi Engineering Co., 246 F. Supp. 261 (W.D.Pa.1965))." Myers v. Mooney Aircraft, Inc., 429 Pa. 177, 185, 240 A.2d 505, 510 (1967). In Bucciconi, the decision cited by the court, the district court concluded that the state supreme court had construed the "doing business" requirement as not extending state jurisdiction to the constitutional limit.
 
 
 29
 The 1968 amendment eliminated the requirement of an actual presence or "entry" into the Commonwealth. Additionally, it added the "shipment" language so as to extend jurisdiction over foreign corporations regardless of the vagaries of each individual company's distribution and marketing system. However, neither of these changes affected the actual context surrounding the "doing business" requirement. Therefore, we conclude the validity of the definition of "doing business" rendered by the Supreme Court of Pennsylvania in the Myers decision was unaffected by the subsequent amendment. Because the legislature in the 1968 amendment did not change the wording in light of the state supreme court's decision in Myers, we are constrained to say the current Pennsylvania statute was not intended to extend the jurisdiction of the Pennsylvania courts to the maximum consistent with constitutional due process.
 
 
 30
 Having concluded the state statute does not reach the constitutionally permissible limit, our determination becomes whether, within the parameters of the state statute as previously defined by the state supreme court, appellants were doing business within the Commonwealth.
 
 
 31
 First, because of the 1968 amendment, it is immaterial whether Bell be classified as an agent or an independent contractor. Second, we note no sales of appellants' crane have been made in Pennsylvania. Third, although Bell maintained an office in the Commonwealth at all times relevant to this case, the relationship between appellants and appellee Bell had terminated before the instant cause of action arose. Appellants thereby ended their contacts with the Commonwealth through Bell. This cessation of contacts with the state assumed a finality since there appears to have been no new national distributor appointed and since there had been no prior sale within the state. Therefore, the record establishes that prior to the collapse of the crane, appellants Societe and Tichauer had ceased to perform through an agent "a series of similar acts for the purpose of thereby realizing pecuniary benefit . . . or . . . a single act . . . for such purpose, with the intention of thereby initiating a series of such acts" within Pennsylvania. Thus, we conclude that statutory prerequisites for "doing business" by appellants under the terms of the 1968 amendment cannot be satisfied through the terminated agency of appellee Bell.
 
 
 32
 The acts of appellants within this Commonwealth since their termination of the business relationship with Bell remain to be considered. These are: (1) the tortious act of appellants within the Commonwealth, to wit, the collapse of the crane allegedly due to defective design and/or manufacture; and (2) the delivery of spare parts into Pennsylvania proximous in time to the collapse of the crane.
 
 
 33
 The Bucciconi case-the decision of the federal district court cited with approval by the Supreme Court of Pennsylvania in Myers-provides perspective on whether these post-termination acts were sufficient to establish the requisite contacts with the state for purposes of "doing business." There, a machine of defendant's manufacture had been brought into Pennsylvania although defendant company itself had no business dealings within the state. As here, no sale had been made within the Commonwealth. Subsequently, the user had problems with the machines; in order to iron them out, the president of the defendant company made several trips into the state. This, the district court had held, did not constitute "doing business" for purposes of the statute in the absence of other indicia of "doing business." In the language of the Supreme Court of Pennsylvania, this would be "isolated or sporadic occurrences" rather than a "systematic course of conduct." We note that as in the instant case, the tort occurred in Pennsylvania and was consequently an additional act of the defendant company within the Commonwealth under the "place of tort" theory.
 
 
 34
 Although there were six deliveries within the state, they represented no more than two transactions between the parties, one of which culminated some time before the crane was removed to Pennsylvania. We believe the five separate deliveries within the Commonwealth pursuant to the December 1 transaction represented one "shipment" for purposes of Sec. 2011(C), and the sixth delivery pursuant to the second transaction represented a second "shipment." In this context, we are unprepared to say the two shipments of spare parts into the state combined with the constructive tortious conduct within the state together demonstrated a systematic course of conduct within Pennsylvania by appellants. Rather, they are no more than sporadic occurrences and resultantly, are insufficient to satisfy statutory prerequisites for the exercise of personal jurisdiction by the state courts in the absence of a prior in-state sale.[5] Since federal jurisdiction in the instant case is predicated upon diversity of citizenship, the district court here can reach no farther than could a state court. Therefore, we are constrained to hold that personal jurisdiction does not lie over these appellants under the terms of the Pennsylvania "long-arm" statute. Having so concluded, it is unnecessary to consider whether service can be effected upon these appellants consistent with the dictates of the Due Process Clause of the Fourteenth Amendment.
 
 
 35
 IV. CONCLUSION.
 
 
 36
 In conclusion, we hold appellants conducted insufficient activities within the Commonwealth as to render them amenable to personal service under the terms of the Pennsylvania "long-arm" statute, 15 P.S. Sec. 2011 (Purdon Supp. 1972). Therefore, the district court erred in denying appellants Societe and Tichauer's motion to dismiss for lack of personal jurisdiction.
 
 
 37
 Accordingly, the order of the district court will be reversed and the case remanded to the district court for further proceedings.[6]
 
 
 
 [1]
 Marley was also impleaded by Bell but is not involved in the instant appeal
 
 
 [2]
 As with Marley, the plaintiffs are not involved in the instant appeal
 
 
 [3]
 There appears to be no dispute as to the operative facts. In addition to the recitation of facts in the district court's opinion, elements of our statement of facts have been gleaned from the interrogatories, depositions, and exhibits filed in the district court
 
 
 [4]
 DiLido Hotel v. Nettis, 215 Pa.Super. 284, 257 A.2d 643 (1969)
 
 
 [5]
 We note that had appellants effected a sale of one of their cranes within the Commonwealth, each of these elements might have assumed a distinctly different importance for purposes of satisfying state statutory prerequisites for the exercise of jurisdiction
 
 
 [6]
 Subsequent to the filing of this opinion, appellee Bell's counsel brought to our attention a new amendment to Sec. 2011(C), effective February 15, 1973. The new act reiterates the bases for jurisdiction in Sec. 2011(C), discussed in this opinion. Additionally, it has a new subsection providing that the jurisdiction of the courts of the Commonwealth is to extend to the maximum allowed under the Constitution of the United States. 42 P.S. Sec. 8309(b) (Purdon's Stat.Legis.Supp.1973)
 The contested service was effected under the now repealed statute; however, the provisions for effecting service under both the old and the new statutes are the same. Compare 15 P.S. Sec. 2011(B) (1967) with 42 P.S. Sec. 8307 (Purdon Stat. Legis.Supp.1973). From this, appellee Bell urges that it has made effective service under the terms of the new statute, and that the new statute is to be retroactively applied to the instant case. However, the only service which has been effected is that made under the prior statute, which we have held not to reach appellants. We do not believe that ineffective service under the old statute can be validated merely by the subsequent passage of a new jurisdictional statute with more inclusive provisions.
 Since Bell has not attempted service under the new statute, we need not consider any remaining issues on retroactive versus prospective application nor on the constitutional efficacy of such service if made.