**H. ALPERS & ASSOCIATES**

v.

**OMEGA PRECISION HAND TOOLS, INC.**

Civ. A. No. 73–2427.

United States District Court,
E. D. Pennsylvania.

March 19, 1974.

Phillip H. Baer, Philadelphia, Pa., for plaintiff.

James B. Zane, New York City, for defendant.

## OPINION

LUONGO, District Judge.

This is a motion under F.R.C.P. 12(b) by defendant Omega Precision Hand Tools, Inc. (Omega), a New York corporation, to dismiss the complaint of plaintiff H. Alpers & Associates (Alpers) for lack of jurisdiction and insufficiency of service of process. For the reasons enumerated below, the motion to dismiss will be denied.

Omega manufactures and sells hand tools. It is neither registered to do business in Pennsylvania, nor does it maintain an office in Pennsylvania. Alpers is a Pennsylvania corporation. By a written agreement dated July 3, 1968, Omega appointed Alpers as its exclusive sales representative in several states, including Pennsylvania. The agreement provided it would be effective as long as Omega received "adequate distribution" in the named territory. "Adequate distribution" was defined as 5% of Omega's total dollar volume. There was no other provision in the agreement relating to termination.

By letter dated September 6, 1973, Omega terminated Alpers' agency. The termination letter expressed no reason for the termination other than Omega's desire to reduce costs by using its own "in house" sales force to replace regional representatives. On October 25, 1973, Alpers filed this suit seeking damages for breach of contract. On November 19, process was served by the United States Marshal on an employee of Omega at Omega's office in Queens, New York. On December 13, Omega moved to quash the return of service on the ground that the court lacked jurisdiction over it. Thereafter, on January 17, 1974, Alpers made service by registered mail on the Secretary of the Commonwealth of Pennsylvania, as provided by

the Pennsylvania long-arm statute, 42 P.S. §§ 8302, 8307.[1] Omega was served by registered mail on January 21, 1974.

Omega's position is that the court lacks jurisdiction over it since it is a foreign corporation which is not "doing business" in Pennsylvania within the meaning of the Pennsylvania long-arm statute. 42 P.S. § 8301 et seq. 42 P.S. § 8309(a) provides that the following, *inter alia*, shall constitute "doing business:"

> "(1) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.
>
> \*　\*　\*　\*　\*　\*
>
> "(3) The shipping of merchandise directly or indirectly into or through this Commonwealth."

There is ample evidence in the pleadings that Omega was "doing business" in Pennsylvania at the time the contract was terminated and continues to do business here. Under the exclusive agency agreement[2] between the parties, Alpers represented, and systematically solicited business for, Omega in Pennsylvania. In the letter of termination, Omega stated its intention to continue the sales work done by Alpers in Pennsylvania except that it would use "its own people." This is not a case in which the foreign corporation's contact with Pennsylvania is limited to placing into the "stream of commerce" products which eventually find their way into Pennsylvania. *Compare* McCrory Corp. v. Girard Rubber Corp., 225 Pa.Super. 45, 307 A.2d 435 (1973). From the pleadings already in the record, it is clear that Pennsylvania was a regular and significant area of sales for Omega, which satisfies the "doing business" test of § 8309(a)(1),[3] and that pursuant

1. "8302. Nonqualified foreign corporations
(a) General rule.—Any foreign corporation which shall have done any business in this Commonwealth without procuring a certificate of authority to do so from the Department of State as required by statute, shall be conclusively presumed to have designated the Department of State as its true and lawful attorney authorized to accept, on its behalf, service of process in any action arising within this Commonwealth. Service of process shall be made in the manner provided by section 8307 of this title (relating to procedure for service of process).
\* \* \*
"8307. Procedure for service of process
Process directed to persons under this chapter shall be served, by the officer to whom such process shall be directed, upon the Department of State, by sending by registered or certified mail, postage prepaid, a true and attested copy of such process, with the fee required by law, and by sending to the defendant, by registered or certified mail, postage prepaid, a true and attested copy thereof, with an endorsement thereon of the service upon the Department of State, addressed to such defendant at his last known address. The Department of State shall keep a record of the day and hour of the service of such process on it. The registered or certified mail return receipts of the Department of State and of

such defendant shall be attached to and made a part of the return of service of such process, except that if the defendant refuses to accept the notice mailed, or cannot be found at his last known address, the registered or certified mail return receipt or other evidence of such facts shall be attached to and made a part of the return and shall constitute sufficient service under the provisions of this section. The fee paid by the plaintiff to the Department of State at the time of the service shall be taxed as costs to the plaintiff, if he prevails in the action necessitating the service of the process."

2. A copy of the agreement was attached to the pleadings by the parties.

3. In construing the previous form of the Pennsylvania long-arm statute, 15 P.S. § 2011 (repealed effective February 15, 1973), the Third Circuit recently concluded that the statute "was not intended to extend the jurisdiction of the Pennsylvania courts to the maximum consistent with constitutional due process." Gorso v. Bell Equipment Corp., 476 F.2d 1216, 1222 (3d Cir. 1973). Rather, the statutory definition of "doing business" required "a systematic course of conduct as contrasted with isolated or sporadic occurrences." 476 F.2d at 1221. Changes made in the language of the old statute, coupled with the addition of a new subsection found at 42 P.S. § 8309(b) make clear the

to that sales activity Omega products were regularly shipped into Pennsylvania, either directly to the buyers or indirectly through Alpers, either of which satisfies the test of § 8309(a)(3).[4]

■■ In short, Omega is subject to this court's jurisdiction by virtue of the Pennsylvania long-arm statute. The question remains whether Omega has been properly served with process. F.R.C.P. 4(f) defines the territorial limits of effective process by providing that "all process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held, and, when authorized by a statute of the United States or by these rules, beyond the territorial limits of that state." Rule 4(f), read in conjunction with 4(d)(7)[5] authorizes service beyond state territorial boundaries as state law permits. The Pennsylvania long-arm statute, 42 P.S. §§ 8302 and 8307, provides for service by registered mail upon the Department of State as agent for foreign corporations doing business in Pennsylvania. The service made by the United States Marshal on Omega at its office in New York was ineffective since it was beyond the territorial limits of Pennsylvania.[6] and ac-

cordingly will be quashed. The second service, however, on January 17, 1974, was proper. Service by registered mail upon the Department of State, with a copy by registered mail to Omega at its business address, complied with the provisions of 42 P.S. § 8307, and was therefore an extraterritorial service authorized by state law. See F.R.C.P. 4(d)(7). Omega does not dispute this, but argues that the second service should be quashed nonetheless because an excessive amount of time had elapsed between the filing of the complaint and the service.

■ The Rules do not specify a time period within which process must be served after a complaint is filed. In the absence of a fixed standard, courts have undertaken to inquire on an *ad hoc* basis whether the plaintiff has "exercise[d] due diligence to perfect service after the filing of the complaint," Elizabethtown Trust Co. v. Konschak, 267 F. Supp. 46, 48 (E.D.Pa.1967) and whether, if there has been delay in effecting service, the delay has "substantially prejudiced the defendant." Ashland Oil & Refining Co. v. Hooker Chemical Corp., 51 F.R.D. 512, 514 (S.D.Ohio 1970); Wright & Miller, Federal Prac-

---

legislature's desire to extend the long-arm to its constitutionally permissible limit to embrace all foreign corporations with "minimum contacts" with Pennsylvania. International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Because of my conclusion that Omega conducted business in Pennsylvania on a regular basis, which would have satisfied even the test articulated in *Gorso*, it is not necessary to analyze the effect of the new statutory provisions. *Compare* Aamco Automatic Transmissions, Inc. v. Tayloe, 368 F.Supp. 1283, 1292–1299 (E.D.Pa.1973), where the limited connection of several of the defendants with Pennsylvania caused Judge VanArtsdalen to consider the constitutionally permissible reach of a long-arm statute.

4. For the conclusion that just one shipment into Pennsylvania satisfies § 8309(a)(3) and that this limited contact satisfies due process, *see* Aquarium Pharmaceuticals, Inc. v.

Industrial Pressing & Packaging, Inc., 358 F.Supp. 441 (E.D.Pa.1973).

5. "Rule 4. Process

\* \* \* \* \*

(d) Summons: Personal Service.

\* \* \* \* \*

(7) Upon a defendant of any class referred to in paragraph (1) or (3) of this subdivision of this rule, it is also sufficient if the summons and complaint are served in the manner prescribed by any statute of the United States or in the manner prescribed by the law of the state in which the district court is held for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state."

6. F.R.C.P. 4(f) permits service beyond state lines (provided it is within 100 miles of the place of holding court) where necessary to comply with F.R.C.P. 14 or 19, but these rules are not involved in this action.

tice & Procedure, § 1086. Generally, in the cases in which complaints have been dismissed for delay, the delay in effecting service was far greater than is here involved. See, *e. g., Elizabethtown, supra* (6 year delay); Schram v. Holmes, 4 F.R.D. 119 (E.D.Mich.1943) (9 months); Hoffman v. Wair, 193 F. Supp. 727 (D.Or.1961) (6 years); Richardson v. White Shipping Co., 38 F.R.D. 494 (N.D.Cal.1965) (28 months). Where the delay has been two and one-half or three months, as in the instant case, courts have refused to dismiss the complaint. *Ashland, supra*; Den Heijher v. Erie R. R. Co., 23 F.R.D. 217 (S.D.N.Y.1959).

It is theoretically possible, of course, that a comparatively brief delay could reflect a lack of diligence on the part of plaintiff or impose a singular hardship on the defendant in a particular case, but Omega does not present such a case. Alpers erred in its first attempt to serve process on Omega, but it corrected the error within a relatively short period of time. More important, Omega has suffered no hardship from the delay. This action involves a straightforward breach of contract claim. If Omega proposes to defend on the ground that Alpers' performance was not "adequate," evidence relevant to this issue should be under Omega's control in the form of company records recording overall sales and the sales through Alpers' distributorship. I cannot perceive how the two and one-half month delay between filing and service will create any obstacle to Omega in preparing its defense. It would do violence to the liberal spirit of the Federal Rules of Civil Procedure if this case were not decided on the merits because of a minor, harmless error at the outset of litigation. *Cf.* Foman v. Davis, 371 U.S. 178, 181, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

The real gist of Omega's objection to the delay in service seems to be that in the period between the filing of the complaint and the service of proc-

ess, it instituted a separate action in the New York state courts seeking a declaratory judgment that it acted lawfully in terminating the Alpers agency. But "it is settled that where the judgment sought is strictly in personam, both the state court and the federal court, having concurrent jurisdiction, may proceed with the litigation at least until judgment is obtained in one of them which may be set up as res judicata in the other." Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456, 466, 59 S.Ct. 275, 280, 83 L.Ed. 285 (1939); Friedman v. N.B.C. Motorcycle Imports, Inc., 452 F.2d 1215 (2d Cir. 1971). Where parties feel strongly enough about the advantages of the forum each has selected that they choose to engage in duplicative litigation, the doctrine of concurrent jurisdiction permits them to do so. Either party may discontinue the action it has instituted if it is sufficiently troubled by the costs, time burden and possible res judicata problems involved in litigating the same issues in two places, but this court will not stay the exercise of its jurisdiction over Alpers' action simply because Omega has chosen to institute a concurrent state court proceeding.

One final comment. Omega has argued that the complaint should be dismissed because Alpers "has deceived and misled" the court by stating in an affidavit on January 9 that service had already been made on the Secretary of the Commonwealth, when in reality, process was not served until January 17. From an examination of the court records, it appears that the complaint was given to the Marshal on January 2 with the requisite instructions to make service by registered mail. For no obvious reason, the Marshal did not do so for two weeks. Under the circumstances, Alpers' statement on January 9 that process had been served was based on the reasonable assumption that the Marshal had completed his task within the seven days which had elapsed, and

no deliberate attempt to deceive the court will be imputed to Alpers from its misstatement.

### ORDER

This 19th day of March, 1974, it is

Ordered that the service by the United States Marshal upon Omega Precision Hand Tools, Inc. at its office in Queens, New York, on November 19, 1973 is quashed; and it is

Further ordered that defendant's Motions to Dismiss for Lack of Jurisdiction and for a Stay of Proceedings be and they are hereby denied.