Elizabeth KEENE

v.

MULTICORE SOLDERS LTD., et al.

Civ. A. No. 73–729.

United States District Court,
E. D. Pennsylvania.

April 9, 1974.

Stephen A. McBride, Media, Pa., for Keene.

Patrick J. O'Connor, Philadelphia, Pa., for Multicore Solders Ltd.

Barton L. Post, Philadelphia, Pa., for Multicore Sales Corp.

Francis E. Shields, Philadelphia, Pa., for Arrow Electronics.

William F. Sweeney, Philadelphia, Pa., for Alpha Metals, Inc.

## OPINION

LUONGO, District Judge.

Plaintiff Elizabeth Keene (Keene) instituted this suit for damages for harm allegedly caused to her by exposure, in the course of her employment in Pennsylvania, to ersin multicore solder manufactured, sold or distributed by defendant corporations. One of the defendants, Multicore Solders, Ltd. (Multicore), has moved, pursuant to F.R.Civ.P. 12(b), to dismiss the suit against it for lack of jurisdiction.

Multicore is a British corporation which has its offices and manufacturing facilities in England. It does not maintain an office in Pennsylvania, and it does not directly sell its products here, but its products have been sold and used regularly in Pennsylvania for many years. Since 1958, Multicore's only sales in the United States have been to British Industries, Ltd., an unrelated New York corporation which serves as Multicore's exclusive sales agent for the United States under written agreement. The sales are actually made by a subsidiary of British Industries, Multicore Sales Corporation, also a New York corporation.

Service was made on Multicore pursuant to the Pennsylvania long-arm statute. Multicore argues that its operations do not constitute "doing business" in Pennsylvania, a statutory prerequisite for obtaining Pennsylvania jurisdiction over a non-registered foreign corporation. Alternatively, it argues that if the statute by its terms reaches Multicore, the statute violates due process.

■■ At the outset, it is necessary to dispel the confusion as to which long-arm statute governs in these proceedings. On November 15, 1972, the legislature repealed Pennsylvania's two long-arm statutes, 15 P.S. § 2011 et seq., and 12 P.S. § 341 et seq., and in their place enacted 42 P.S. § 8301 et seq., effective on February 15, 1973. Plaintiff Keene filed her complaint on March 29, 1973, and process was served on Multicore on May 10, 1973. "While substantive rights are settled as of the time the cause [of action] arises, rights in procedural matters, such as jurisdiction and service of process, are determined by the law in force at the time of the institution of the action." Kilian v. Allegheny County Distributors, 409 Pa. 344, 350–351, 185 A.2d 517, 520 (1962). In this case, the complaint was filed and process was served after the new Pennsylvania long-arm statute took effect, therefore the new statute governs.

The new Pennsylvania long-arm statute provides, in pertinent part:

"§ 8302. Nonqualified foreign corporations

(a) General rule.—Any foreign corporation which shall have done any business in this Commonwealth without procuring a certificate of authority to do so from the Department of State as required by statute, shall be conclusively presumed to have designated the Department of State as its true and lawful attorney authorized to accept, on its behalf, service of process in any action arising within this Commonwealth. Service of process shall be made in the manner provided by section 8307 of this title (relating to procedure for service of process)."

\* \* \* \* \* \*

"§ 8309. Acts affecting jurisdiction

(a) General rule.—Any of the following shall constitute 'doing business' for the purposes of this chapter:

(1) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.

(2) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.

(3) The shipping of merchandise directly or indirectly into or through this Commonwealth.

\* \* \* \* \* \*

(b) Exercise of full constitutional power over foreign corporations.—In addition to the provisions of subsection (a) of this section the jurisdiction and venue of courts of the Commonwealth shall extend to all foreign corporations and the powers exercised by them to the fullest extent allowed under the Constitution of the United States."

\* \* \* \* \* \*

The statute identifies two elements which must be present for a Pennsylvania court to exercise long-arm jurisdiction over a foreign corporation: (1) the cause of action must have arisen within Pennsylvania, and (2) the foreign corporation must have done business in Pennsylvania. Because Keene alleges that she contracted illness from her exposure to Multicore's product at her place of employment in Chester, Pennsylvania, the first requirement is met. What remains to be considered is whether Multicore has "done business" in Pennsylvania within the meaning of the statute.

Under § 8309(a)(3), "the shipping of merchandise directly or indirectly into or through this Commonwealth" constitutes "doing business" in Pennsylvania. This language signifies the legislature's intent to define "doing business" more expansively than it did in the previous version of the long-arm statute. Under the repealed long-arm, 15 P.S. § 2011, subd. C,[1] the direct or indirect shipment of merchandise into the state constituted "doing business" only if a series of shipments "for the purpose of thereby realizing pecuniary benefit . . ." or a single shipment "with the intention of . . . initiating a series of such acts" was made. The old statute "contemplate[d] a systematic course of conduct as contrasted with isolated and sporadic occurrences." Gorso v. Bell Equipment Corp.,[2] 476 F.2d 1216, 1221 (3d Cir. 1973) quoting Myers v. Mooney Aircraft, Inc., 429 Pa. 177, 185, 240 A. 2d 505 (1967). Under the present statute, a single direct or indirect shipment of goods into Pennsylvania satisfies the statutory requirement of "doing business." Aquarium Pharmaceuticals, Inc. v. Industrial Pressing & Packaging, Inc., 358 F.Supp. 441 (E.D.Pa.1973).

In the instant case, the change in statutory language does not affect the result. Multicore has derived income from the sale of its product in the Unit-

---

1. 15 P.S. § 2011, subd. C (repealed effective February 15, 1973) provided:

"For the purpose of determining jurisdictions of courts within this Commonwealth, the doing by any corporation in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose, with the intention of thereby initiating a series of such acts, shall constitute 'doing business.' For the purposes of this subsection the shipping of merchandise directly or indirectly into or through this Commonwealth shall be considered the doing of such an act in this Commonwealth."

2. In Gorso, the Court of Appeals analyzed the reach of the Pennsylvania long-arm statute as amended in 1968. In light of the subsequent amendments repealing 15 P.S. § 2011 et seq., and enacting 42 P.S. § 8301 et seq., the opinion assumes reduced importance, although it furnishes a valuable summary of the series of steps taken by the Pennsylvania legislature to gradually expand the reach of the long-arm. 476 F.2d at 1218–1219. The court in Gorso was aware of the enactment of 42 P.S. § 8301 et seq., but the facts in Gorso did not require an analysis of the new amendments. 476 F.2d at 1223, n. 6.

ed States. In order to systematically cultivate and serve this market, Multicore designated British Industries as its exclusive sales agent. Since 1958, British Industries has sold Multicore's product on a regular basis in Pennsylvania. Through its exclusive sales agent, Multicore has made a series of indirect shipments into Pennsylvania. This "systematic course of conduct" by a foreign manufacturer would, in my view, satisfy even the test for "doing business" under 15 P.S. § 2011, subd. C, now repealed.[3] It follows, *a fortiori*, that Multicore has "done business" under the present long-arm with its more expansive definition of the term.

■ The only remaining question is whether the exercise of jurisdiction over Multicore as authorized by the long-arm statute would violate due process. Under the test of International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), due process permits the exercise of jurisdiction over a foreign corporation where that corporation has "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" In Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), the Court elaborated upon the "minimum contacts" test, observing that while "the application of that rule will vary with the quality and nature of the defendant's activity . . ., it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." 357 U.S. at 253, 78 S.Ct. at 1240.

In applying the test of *International Shoe* and *Hanson*, many courts have concluded that where a foreign corporation's volume of business and pattern of product distribution is such that it should reasonably anticipate that its product may ultimately be used in the state, due process permits the state to exercise jurisdiction over it.[4] In Pennsylvania those courts considering the constitutional reach of long-arm jurisdiction have unanimously upheld jurisdiction in cases where the pattern of product distribution rendered reasonably foreseeable the use of manufacturer's product in Pennsylvania.[5]

3. As a result of the confusion as to which long-arm statute governed service in this case, the parties went to considerable length in their memoranda of law to analogize or distinguish *Gorso* from the instant case. The cases are clearly distinguishable. In *Gorso*, jurisdiction was sought over two French companies, the manufacturer of a tower crane and its world sales agent. The plaintiff argued that the French companies were "doing business" in Pennsylvania because their sales agent for the United States, Bell Equipment Corp., maintained an office in Pennsylvania. Unlike the instant case, where the relationship between Multicore and British Industries remained in effect at all times relevant, the agency arrangement between Bell Equipment and the French companies had been terminated before the cause of action arose. Further, whereas Multicore's products have been shipped into Pennsylvania continuously, neither of the two cranes which the French corporation manufactured was sold or delivered in Pennsylvania. The crane which collapsed and gave rise to the cause of action in *Gorso* was sold to a Kansas corporation and delivered to an Ohio jobsite and brought

in to work on a construction job in Pennsylvania. Neither the fact of Bell's Pennsylvania office nor the presence of the crane in Pennsylvania when it collapsed satisfied the statutory definition of "doing business" in Pennsylvania. Bell did make several repairs on the crane in Pennsylvania, but the court characterized these as "isolated or sporadic occurrences" rather than the "systematic course of conduct" needed to confer jurisdiction over the foreign manufacturer.

4. See, e. g., Keckler v. Brookwood Country Club, 248 F.Supp. 645 (N.D.Ill.1965); Harford v. Smith, 257 F.Supp. 578 (N.D.W.Va. 1966); Jackson v. National Linen Service Corp., 248 F.Supp. 962 (W.D.Va.1965); Look v. Hughes Tool Co., 367 F.Supp. 1003 (D.N.H.1973); Duple Motor Bodies Ltd. v. Hollingsworth, 417 F.2d 231 (9th Cir. 1969); Eyerly Aircraft Co. v. Killian, 414 F.2d 591 (5th Cir. 1969); Gray v. American Radiator & Standard Sanitary Corp., 22 Ill. 2d 432, 176 N.E.2d 761 (1961).

5. Scafati v. Bayerische Motoren Werke AG, 53 F.R.D. 256 (W.D.Pa.1971); Benn v. Linden Crane Co., 326 F.Supp. 995 (E.D.Pa. 1971); Gorso v. Bell Equipment Corp., 330

Given these precedents, I conclude that Multicore "has purposefully avail-[ed] itself of the privilege of conducting activities" in Pennsylvania. Hanson v. Denckla, *supra*. There is nothing unfair about requiring Multicore to defend its product in Pennsylvania where the product has been regularly and systematically sold. Indeed, unfairness would result if Multicore were able to insulate itself for jurisdictional purposes from all that transpired after its sale to British Industries. The "consumers" of Multicore's product are in Pennsylvania, and Multicore derives profits from the sale of its products here. The sale to British Industries is merely a commercial device by which Multicore expedites the distribution of its product to the ultimate market, the United States, including Pennsylvania. It was here in Pennsylvania that Multicore's product allegedly caused injury. The state has a legitimate interest in "providing a local forum for suits against foreign manufacturers" of allegedly defective products. *Gorso, supra*, 476 F.2d at 1220; *cf.* McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

My conclusions in this case also draw support from the recent, thoughtful opinion of my colleague, Judge Van-Artsdalen, dealing with a similar fact situation. Benn v. Linden Crane Co.,[6] (E.D.Pa.1973), 370 F.Supp. 1269.

Multicore's motion to dismiss will be denied.

F.Supp. 834 (W.D.Pa.1971), rev'd on non-constitutional grounds, 476 F.2d 1216 (3d Cir. 1973); Smiley v. Gemini Investment Corp., 333 F.Supp. 1047 (W.D.Pa.1971); McCrory Corp. v. Girard Rubber Corp., 225 Pa.Super. 45, 307 A.2d 435 (1973).

6. In *Benn*, process was originally served on Linden-Alimak on March 12, 1970, under the terms of 15 P.S. § 2011. On April 30, 1971, Judge VanArtsdalen denied Linden's motion to dismiss for lack of personal jurisdiction, after a factual finding that Linden-Alimak

was "doing business" in Pennsylvania, based on an expansive view of the statutory provision. 326 F.Supp. 995 (E.D.Pa.1971). After the Third Circuit's *Gorso* opinion defined the scope of the long-arm more restrictively, the court entertained a renewed motion to dismiss which was granted on May 25, 1973. In the interim, the new long-arm statute took effect. Benn's attempt to serve process pursuant to the new statute produced another motion to dismiss by Linden, and prompted Judge VanArtsdalen's December 1973 opinion.