The BOEING COMPANY, a corpora-
tion, Plaintiff,

v.

SPAR AEROSPACE PRODUCTS LTD.,
Defendant,
and
Levy Industries Limited, Defendant,
York Gears Limited, Defendant.

Civ. A. No. 73–150.

United States District Court,
E. D. Pennsylvania.

July 24, 1974.

Jerome A. Hoffman, Dechert, Price & Rhoads, Philadelphia, Pa., for plaintiff.

Jerome J. Shestack, Schnader, Harrison, Segal & Lewis, Dennis R. Suplee, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

VanARTSDALEN, District Judge.

Plaintiff, The Boeing Company (Boeing) brought this indemnity/contribution action against defendants, Spar Aerospace Products Ltd. (Spar), Levy Industries Limited (Levy), and York Gears Limited (York), for breach of express and implied warranties on the basis of the defective manufacture of certain helicopter component parts. Boeing is a Delaware corporation with its principal place of business in Pennsylvania, while the defendants are Canadian corporations with their principal places of business in Toronto, Canada.

The complaint alleges that the Vertol Division of Boeing designs, manufactures and sells assembled helicopter aircraft. Defendants are alleged to be in-

volved in the manufacture of helicopter component parts and pursuant to an agreement between Boeing and defendants, supplied Boeing with helicopter component parts. On May 3, 1967, a Boeing helicopter, which had been assembled at plaintiff's Pennsylvania plant and equipped with defendants' transmission components crashed near Santa Ana, California, killing four military personnel. The decedents' heirs brought wrongful death actions against Boeing in California State Court. Boeing settled those actions for $650,000.00. In this suit, Boeing alleges that the crash of the helicopter resulted from the defective manufacture of certain pinion gears supplied by defendants.

The three Canadian defendants have moved to dismiss the complaint for lack of in personam jurisdiction. Several affidavits and exhibits have been filed by the parties and oral argument has been presented. Since determination of this jurisdictional issue requires independent analysis of the activities of each of the defendants, separate treatment will be necessary. Preliminarily, however, certain facts and issues are applicable to all defendants and may be collectively discussed.

■ None of the defendants are incorporated in Pennsylvania or registered to do business in the state. Pursuant to Fed.R.Civ.P. 4(e),[1] plaintiff served process on defendants according to the provisions of the former Pennsylvania "long-arm" statute. Pa.Stat. tit. 15 § 2011. The current "long-arm" statute, Pa.Stat. tit. 42 §§ 8301–8311, was not in effect at the time the presently disputed service was made. The validity of service therefore must be governed by the former "long-arm" statute, Pa.Stat. tit. 15 § 2011, as it was the law in effect at the time service was made. Benn v. Linden Crane Co., 370 F.Supp. 1269, 1273–

1274 (E.D.Pa.1973); McCully-Smith Associates, Inc. v. Armour and Company, 349 F.Supp. 694, 695–696 (W.D.Pa. 1972); Nelson v. Doll Furniture Company, 304 F.Supp. 159, 161 (E.D.Pa.1969).

Section 2011 subd. B of the former statute states:

Any foreign business corporation which shall have done any business in this Commonwealth, without procuring a certificate of authority . . . shall be conclusively presumed to have designated the Secretary of the Commonwealth as its true and lawful attorney authorized to accept, on its behalf, service of process in any action arising within this Commonwealth.

■■ A clear and literal reading of this provision indicates two basic jurisdictional requirements: (1) the foreign corporation must have done business in Pennsylvania and (2) the action must arise within Pennsylvania. As per the latter requirement, the Third Circuit concluded in Siders v. Upper Mississippi Towing Corporation, 423 F.2d 535 (3rd Cir. 1970), that it means nothing more than that the cause of action be filed in Pennsylvania. *Id.* at 537, n.3. *But see* Keene v. Multicore Solders Ltd., 379 F. Supp. 1279, at 1281 (E.D.Pa.1974).[2] Given this interpretation, the "arise within" requirement of Section 2011 subd. B is clearly satisfied in the instant case as suit was filed in Pennsylvania. However, even accepting, as defendants contend, that this language requires that the cause of action factually arise within Pennsylvania, see Keene v. Multicore Solders Ltd., *supra*, it is clear, under the facts of this case, that plaintiff's cause of action arises out of the sale and delivery of helicopter component parts to plaintiff in Pennsylvania for assembly in the helicopter herein involved at plaintiff's Pennsylvania plant. The instant action therefore clearly "arises

---

1. Fed.R.Civ.P. 4(e) permits effective service of process beyond the territorial limits of the state in which a district court is held whenever authorized by a statute of the United States or the state in which the district court is held.

2. This case was decided under the current "long-arm" statute but interpreted identical language as the quoted portion of Section 2011, subd. B.

within" Pennsylvania under any construction of that phrase, even though arguably plaintiff had no cause of action against defendants until plaintiff's liability to the crash victims was determined by settlement of the civil actions filed in California State Court.

The sole remaining inquiry therefore is whether the defendants have done business in Pennsylvania within the meaning of Section 2011 subd. C and if so, whether the extension of jurisdiction over them as authorized by the "long-arm" statute would violate the constitutional mandates of due process.

■ Section 2011 subd. C, which defined doing business under the former statute, read after amendment in 1968:

> For the purposes of determining jurisdictions of courts within this Commonwealth, the doing by any corporation in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose, with the intention of thereby initiating a series of such acts, shall constitute "doing business." For the purposes of this subsection the shipping of merchandise directly or indirectly into or through this Commonwealth shall be considered the doing of such an act in this Commonwealth.

> Pa.Stat. tit. 15 § 2011 subd. C, as amended, Acts 1968, July 20, P.L. 459, No. 216 § 54.

In order to establish "doing business" under any of the above methods of Section 2011 subd. C, "a systematic course of conduct as contrasted with isolated or sporadic occurrences" has to be demonstrated. Gorso v. Bell Equipment Corporation, 476 F.2d 1216, 1221–1222 (3d Cir. 1973). The activities of the defendants must therefore be measured by this statutory standard.

### I. YORK

As indicated by the various affidavits submitted by the parties [3] and defendants' answers to interrogatories, York was organized and operated under the laws of Canada, had its principal place of business in Toronto, and was in the business of manufacturing gears and related components for aircraft. On July 3, 1969, York sold its assets to Spar. Thereafter on December 31, 1971, York changed its name to Levy Service Industries Limited (Levy Service) which has since been engaged in the business of sufferance warehouseman and cold storage.

■ Beginning as early as 1962 and continuing through July, 1969, York was a major supplier of helicopter component parts for Boeing shipping its products directly into Pennsylvania to Boeing plants or other specified locations within Pennsylvania.[4] During this period York directly shipped hundreds of transmission gears to Boeing in Pennsylvania with sales totaling more than 15 million dollars. Moreover, during this same period, York personnel frequently visited Boeing's Pennsylvania plant to negotiate its Boeing sales contracts.[5]

■ This pattern of systematic, continuous and substantial business activity within Pennsylvania is clearly sufficient to establish doing business under Section 2011 subd. C. Strick Corpora-

---

3. Plaintiff has submitted the affidavits of G. J. Paolin, Assistant Secretary of the Boeing Company and Gene J. Konecny, Deputy Director Material of the Boeing Vertol Company, a Division of Boeing, with accompanying exhibits. Defendants have filed the affidavits of Joseph G. Roberts, Vice President of Levy Service Industries Limited, Benjamin Levy, President of Levy Industries Limited, and George Aubrey, Vice President of Spar Aerospace Products Ltd.

4. Sales may have actually begun before 1962 as defendant York's answers to interrogatories indicate that sales commenced in 1959. Plaintiff's affidavits, however, identify the date as 1962.

5. There is some dispute in the affidavits as to whether York engaged in business activity within the state after July, 1969. However, under the circumstances, these factual disputes need not be resolved.

tion v. Cravens Homalloy (Sheffield) Ltd., 352 F.Supp. 844, 846–847 (E.D.Pa. 1972); LTM Corporation v. Edward M. Livingston & Sons, Inc., 339 F.Supp. 1270, 1271–1272 (E.D.Pa.1972); Copperweld Steel Company v. Demag-Mannesmann-Boehler, 54 F.R.D. 539, 540–541 (W.D.Pa.1972). Defendant takes pains to point out that Boeing was the dominant partner in this sales arrangement and at all times set the manufacturing specifications for all operations. Whatever possible relevance these facts, if correct, may have on the merits of the case, they in no way affect the jurisdictionally compelling facts that York directly shipped its merchandise into Pennsylvania on a systematic and continuous basis and negotiated business here.[6] York further contends that because its in-state activities terminated after July, 1969, it was no longer doing business at the time of service (January, 1973), which York argues, the statute requires. Specifically, York posits that Section 2011 subd. B's seemingly unambiguous language, "[a]ny foreign business corporation, which *shall have done* any business in this Commonwealth" has been refined by case law to mean that a corporation must be doing business in Pennsylvania at the time of service of process. It is true that there is some case law from this district stating that for the purpose of determining the validity of service upon a nonqualified foreign corporation, the test is whether such corporation was doing business in Pennsylvania as of the date of service. Hill v. J. M. Lehmann Company, 345 F.Supp. 1267 (E.D.Pa.1972), states that "the key to proper service is whether the corporation was 'doing business' in Pennsylvania at the time the service was attempted." *Id.* at 1268 citing Henson v. Fred Harvey, Inc., 308 F. Supp. 218 (E.D.Pa.1970), and Benn v. Linden Crane Co., 326 F.Supp. 995 (E.

D.Pa.1971), vacated on other grounds, 370 F.Supp. 1268 (E.D.Pa.1973). However, LTM Corporation v. Edward M. Livingston & Sons, Inc., supra, and Strick Corporation v. Cravens Homalloy (Sheffield) Ltd., *supra*, conclude otherwise.

Nowhere in the statute is there a requirement that a corporation be doing business at the time of service of process. On the contrary, the statute plainly states that any corporation which "*shall have done* any business in this Commonwealth" is subject to service. Imposition of a requirement such as contended by defendant would not only be inconsistent with this express wording but would also transgress the statute's long recognized purpose of bringing foreign corporations doing business in the state within the jurisdictional grasp of the Pennsylvania courts. Wenzel v. Morris Distributing Co., Inc., 439 Pa. 364, 371, 266 A.2d 662 (1970); Hoffman Construction Co. v. Erwin, 331 Pa. 384, 386, 200 A. 579 (1938). Under defendant's construction, a foreign corporation which has been doing business in Pennsylvania could avoid suit from those with whom it has been dealing or has otherwise become liable by simply terminating its in-state activities just prior to the time of service. Such a construction flies in the face of the avowed purpose of the statute. Moreover, acceptance of defendant's construction would create a clearly unintended anomaly in the Business Corporation Law, Pa.Stat. tit. 15 § 1001 et seq.[7] Pursuant to Section 2015, a foreign corporation properly qualified to do business in Pennsylvania under Section 2001, may withdraw its authority. By the express terms of the statute, a corporation that withdraws its authority continues to be liable and subject to process in any pending action, any right of action or any contract made by the corporation in Pennsylvania, and any

6. It should also be noted that even though York may have shipped its merchandise into Pennsylvania, F.O.B. Toronto, these shipments nevertheless constitute "direct" shipments under the statute. LTM Corporation

v. Edward M. Livingston & Sons, Inc., *supra*, 339 F.Supp. at 1271.

7. The "long-arm" provisions of Section 2011 are part of the Business Corporation Law.

liability or obligation incurred in Pennsylvania prior to its withdrawal. There is no logical reason why a nonqualified corporation would not have continuing liabilities after withdrawal at least coextensive with those of a qualified corporation that voluntarily withdraws.

■ To the extent therefore that Hill v. J. M. Lehmann Co., *supra*, and/or Benn v. Linden Crane Co., 326 F.Supp. 995 (E.D.Pa.1971), are understood as holding that before service of process on a foreign nonqualified corporation may be validly obtained, the corporation must be doing business in Pennsylvania as of the date of service of process, such interpretation is expressly rejected as an inaccurate statement of the law.[8]

Whether every foreign corporation which has ever done business within Pennsylvania remains forever amenable to service under the Pennsylvania "long-arm" statute consistent with the constitutional requisites of due process is a question I need not now decide. Whatever the constitutional limit of due process may be, I need only determine the constitutional issue with respect to the particular factual presentation of this case. In the years York marketed its products and engaged in related business activity in Pennsylvania, it purposefully availed itself of the privilege of conducting activities within this state, thereby invoking the benefits and protections of Pennsylvania law. Under the well established principles of International Shoe Co. v. Washington, 326 U. S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), therefore, a procedure authorizing jurisdiction over York in this lawsuit can hardly be said to be undue or unreasonable. The extraterritorial process served on York pursuant to the Pennsylvania "long-arm" statute will therefore be sustained.

## II. SPAR

■ Spar is a corporation organized and existing under the laws of Canada with its principal place of business in Toronto and engaged in the manufacture and sale of aircraft component parts. On July 3, 1969, Spar purchased the assets of York and became a supplier of helicopter component parts to Boeing. From 1969 to the present time, Spar has made various sales of helicopter component parts to Boeing shipping the parts directly to Boeing's Pennsylvania plant. As of June, 1973, these sales totaled over $150,000.00. Additionally, since 1969, approximately twenty to twenty-five employees of Spar have visited Boeing's Pennsylvania plant for the purpose of negotiating and finalizing sales contracts of Spar products to Boeing.

■ By systematically shipping merchandise directly into the state and periodically visiting the state on business purposes, it is clear that Spar has performed "a series of similar acts" sufficient to constitute doing business within the state under Section 2011 subd. C Strick Corporation v. Cravens Homalloy (Sheffield) Ltd., *supra*, 352 F.Supp. at 846–847; LTM Corporation v. Edward M. Livingston & Sons, Inc., *supra*, 339 F.Supp. at 1271–1272. Moreover, since Spar has enjoyed the benefits and protections of Pennsylvania law by virtue of these in-state business activities, the constitutional requisites of due process are equally satisfied. International Shoe Co. v. Washington, *supra*; Hanson v. Denckla, *supra*. As jurisdiction over Spar is both statutorily and constitutionally permissible, the extraterritorial service on that corporation will be sustained.

---

8. The decisions in Hill v. J. M. Lehmann Co., and Ben v. Linden Crane Co., as well as the instant decision, were decided by the same district judge, who now concedes that the interpretation that might well be placed on the previously quoted language is not a correct statement of the law nor necessary to the decisions reached therein. Of course, this is not to imply that a corporation which is in fact doing business as of the date of service of process would not likewise be subject to jurisdiction.

### III. LEVY

 Levy, a corporation organized and existing under the laws of Canada, is a holding company which currently owns Levy-Russell Limited which in turn owns 99.98% of the stock of Russell Industries Limited which in turn owns Levy Service. York had changed its name to Levy Service on December 31, 1971. Although not clearly established in the record, it is reasonably certain that Levy owned or controlled York during the years York was engaged in business dealings with Boeing.[9] In any event, the affidavits and exhibits make clear that although Levy was not itself engaged in the manufacture and sale of helicopter component parts, it played a definite role in York's manufacture and sale of such parts to Boeing. Over the course of the York-Boeing sales arrangement, Levy and Boeing periodically met and communicated directly with each other on matters concerning the York-Boeing sales contracts. The Konecny affidavit, submitted on behalf of Boeing, identifies the Levy communications as involving the more significant aspects of the York-Boeing sales contracts. Moreover several of the meetings between Levy and Boeing personnel occurred at the Boeing plant in Pennsylvania. From these facts, it can be concluded that Levy performed a "series of similar acts" within the state sufficient to constitute doing business under Section 2011 subd. C by participating in the systematic and continuous shipment of York products directly into Pennsylvania and by personally negotiating business matters within the state. As has been already indicated with respect to York and Spar, by reason of these activities Levy has purposefully availed itself of the privilege of conducting activities within Pennsylvania thereby invoking the benefits and protections of its laws. Under these circumstances, due process is not violated by the extension of jurisdiction over a nonresident, International Shoe Co. v. Washington, *supra*; Hanson v. Denckla, *supra*, and the extraterritorial service on Levy will therefore be sustained.[10]

---

9. Plaintiff's affidavits and certain of its exhibits, refer to York as a division of Levy. Paragraph 8 of the complaint alleges that York was a division or wholly owned subsidiary of Levy.

10. The withdrawal argument purported York is similarly rejected with respect to defendant Levy. See discussion *supra* at 104–106.